### HIGGINS *v.* VILLAGE OF GLENS FALLS.

*(Supreme Court, General Term, Third Department.* September 25, 1890.)

**1. MUNICIPAL CORPORATIONS—DEFECTIVE STREETS.**

On one side of a street in a village, a surface of rock, naturally fitted for a sidewalk, had been used by the public for many years as part of a continuous sidewalk, the other portion of which had been constructed by the village; but, to make it reasonably safe, the removal of small irregularities on the surface was necessary, and this the village had the power and the means to do. *Held*, that the village was liable for injuries resulting from the fall of one passing over the walk, caused by such irregularities in its surface.

**2. SAME—EVIDENCE.**

In an action against a village for damages for the death of plaintiff's intestate, caused by his falling on a sidewalk the surface of which was so uneven as to be unsafe, the evidence was that, while he was walking upon such dangerous sidewalk, he stumbled and fell, though the witness could not give the precise cause of his falling. The accident happened in the day-time, and it appeared that he had an infirm knee, which made him liable to fall when walking on a smooth surface. *Held*, that a verdict for plaintiff should not be set aside, on the ground that the evidence tended as much to show that decedent's carelessness or his infirmity caused his fall, as that it was caused by the defects in the sidewalk.

MAYHAM, J., dissenting.

Appeal from circuit court, WARREN county.

Action by Jane Higgins, as administratrix, etc., of George W. Smith, deceased, against the village of Glens Falls, for damages for the death of said George W. Smith from a fall alleged to have been caused by the unsafe condition of a sidewalk in that village. The jury found a verdict for plaintiff. From the judgment entered thereon, and from an order denying its motion for a new trial, defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Richard L. Hand,* for appellant.   *Jesse S. L'Amoreaux,* for respondent.

LANDON, J.   I advise an affirmance of the judgment.   This was not less a sidewalk because it was naturally fitted for the purpose, and had been adopted by the public and used as such from time immemorial, instead of being an artificial one.   Natural adaptation in great part made construction unnecessary.   It was upon a public and much-used street, and was a section of a continuous sidewalk, of which the other portion had been constructed.   It needed the removal of small irregularities upon its surface to make it reasonably safe.   The village had the power and the means to do this, and, under the circumstances, ought to have done it.   *Saulsbury* v. *Village of Ithaca,* 94 N. Y. 27.   The fact that the village did not lay the flag-stones does not excuse it.   It clearly accepted and adopted the advantage of their natural adaptation to the purposes of the walk.

Respecting the cause of the intestate's fall, the evidence supports the verdict.   It is reasonably clear that the intestate fell because of the irregularities in the surface of the natural flag-stone.   We can speculate as to other causes, as, that he was careless, or that his infirm knee failed to support him.   There can hardly be said to be any evidence tending to prove that he fell from either of these causes.   If we are to indulge in speculation, we might possibly say that he first died and then fell.   But if there was any evidence tending to suggest any other cause than the defects in the walk, the jury passed upon it.   Proof to an absolute certainty of the cause of his fall is not necessary.   If the evidence fairly tends to show that the intestate fell because of the defects in the sidewalk, and also tends to show a possibility that he fell from other causes, then the case is for the jury.   The question is whether the one cause has more support than any other in the evidence.   It is only in those cases in which the evidence plainly points as much to an adequate cause for which the defendant is not liable, as to a cause for which the defendant is liable, that the court can say, notwithstanding the verdict, that the case is

not proved, and that the verdict should be set aside. Here, there is evidence that the intestate. was walking upon this dangerous sidewalk when he slipped or stumbled, and fell, though the witness could not give the precise cause of his falling. Thus it was shown that the intestate, being amid dangers likely to trip him, was tripped. Shall we attribute his fall to the danger known to be present, or to a possible danger not known to be present? The jury answered this question. Judgment affirmed, with costs.

LEARNED, P. J. With some doubt as to the liability of the village to keep the place in good condition where the accident happened, as my associates agree as to such liability, I concur in within opinion.

MAYHAM, J., (*dissenting.*) The plaintiff brought this action to recover for the death of her intestate, caused by the alleged negligence of the defendant in not maintaining safe and suitable sidewalks, by reason of which plaintiff's intestate was killed. The action was tried at the Warren circuit, and resulted in a verdict for the plaintiff on which judgment was entered. At the trial, a motion was made by defendant for new trial upon the minutes, which was denied. The defendant appeals from the order denying the motion for a new trial, and also from the judgment entered upon the verdict. The case discloses that Glen street is one of the principal streets in the village of Glens Falls; that said street is planked to the width of 12 feet, from the bridge across the Champlain canal to the bridge across the Hudson river, in said village; and that the defendant has never constructed or maintained a sidewalk on either side of such plank-road between these points, although that street is much traveled by pedestrians. On the north-easterly side of the planked part of the street is a path or walk, which has been used as a sidewalk or way for pedestrians to pass along Glen street from one bridge to the other for about 50 years, although no artificial sidewalk has ever been constructed by the village or village authorities, the travel being upon a natural surface of a rock, or rocks, which crop out at that point, and along which the planks of the traveled portion of the street are laid. The rock which has thus been used as a walk is of uneven surface, being ridgy or wavy, at some points on a grade with the plank on the street, and at some points higher than the plank, the walk being somewhat irregular in width; and, as described by witnesses, has at two points a drop or step of about eight inches extending diagonally across the same. This rock, or walk, is represented by the evidence as slippery when wet or coated with ice, and pedestrians are proved to have slipped and fallen on the same before the accident complained of. The case does not show that the village authorities, by any formal act. ever adopted this sidewalk or ever applied any labor or any attention to the same, and it remains in the same condition in which it was before the incorporation of the defendant, except as it has been worn by travel. On the 3d of May, 1884, plaintiff's intestate, an aged and infirm man, while passing over this walk, fell, striking his head upon the plank, and while in that position the wheels of a loaded vehicle passed over him, causing his death. The appellants insist that there is no evidence of negligence on the part of the defendant to justify or sustain the verdict, or uphold the judgment; that, not having adopted or constructed a sidewalk at this point, the defendant owed no duty to the deceased or to the public in relation thereto, and are in no way responsible for injuries to persons who pass over the same, and may be injured by reason of its uneven surface. On the part of the respondent, it is insisted that it is the duty of the defendant, under the express provisions of the charter and by-laws adopted in pursuance thereof, to erect and maintain a safe and suitable sidewalk at this point, and that, by reason of failure to do so, the defendant is liable. Chapter 291, Laws 1870, under the general provisions of which the defendant was incorporated, authorizes the trustees to make by-laws for certain specific

purposes.  Section 3, tit. 3, provides as follows: "The trustees shall have power, as to acts and matters within the corporate bounds, to make, publish, amend, and repeal rules, ordinances, and by-laws for the following purposes;" and subdivision 25 of this section extends that power to "the making of by-laws;" "to regulate and prescribe the width, line, and grade of streets, avenues, lanes, and sidewalks; to have plank or flag roads, streets, cross-walks, or sidewalks; lay out or open new roads and streets; to widen, alter, and change the grade, or otherwise improve, roads, avenues, streets, and sidewalks."  This section also provides that all such by-laws, rules, and ordinances shall be posted in three public places in the village before they shall take effect.  On the trial the plaintiff put in evidence sections 1 and 14 of what purported to be "rules and by-laws and ordinances of the village of Glens Falls, adopted June 18, 1883."  These sections seemed to have been received without objection, but there was no proof of posting, as required by subdivision 27 of section 3, above referred to.  Section 1 of the by-laws made it the duty of the street commissioners, subject to the control of the trustees, to have the immediate care and supervision of all streets, sidewalks, culverts, drains, etc., and subject to such control and direction to keep the streets, culverts, drains, and alleys in good condition, and to exercise the power and authority conferred by law on the commissioners of highways in towns.  By section 14 of such by-laws, it is provided that "sidewalks shall be constructed, either of slate or stone flags, brick or concrete, not less than four feet wide, on both sides of each street in this village."  This section imposed upon the owners of premises opposite and adjoining such walks the duty of constructing and maintaining the same, under the supervision of the street commissioner, and, in default of so doing, it was the duty of the street commissioner to perform that service, the expense of which was collectible of the land-owners, with costs of the action by the village.

As these by-laws were received in evidence in this case without objection, they must be treated on this appeal as having been legally adopted and promulgated, in accordance with the provisions of section 3, tit. 3, c. 291, Laws 1870; and this brings us directly to the consideration of the effect of section 14 of the ordinance or by-laws of June 18, 1883.  Was that ordinance or by-law an adoption by the defendant of sidewalk on both sides of all of the streets of the village?  In other words, was the adoption of this by-law a judicial determination by the village to exercise the discretionary power of erecting and maintaining a suitable and reasonably safe sidewalk at this point along Glen street?  The rule in this state seems settled that a municipality has a judicial discretion in determining whether or not it will build, or permit to be built, a sidewalk in any given street, and with the exercise of that discretion the court cannot interfere.  *Saulsbury* v. *Village of Ithaca*, 94 N. Y. 30.  In this case the court uses this language: "It is true that whether a municipal corporation shall build, or permit to be built, a sidewalk on any of its streets, is matter of discretion not to be regulated by the courts."  An examination of the facts shows that this sidewalk had been constructed by some party other than the village of Ithaca, but it had been used as a sidewalk, in connection with the street, for over a year, to the knowledge of the defendant, and its liability was placed upon the ground of the acquiescence, on the part of defendant's officers, in the construction of the walk and use thereof by the public.  Upon this branch of the case the court says: "In this case, therefore, it can make no difference how the walk came into existence if the corporation, with notice, permitted it to be used for public travel.  By the act of the builder, and acceptance or acquiescence in the building of it on the part of the defendant's officers, they had control over it, and it became the property of the village as completely as if it had been put in position by the village itself."  It will be seen that the only distinguishing feature between that case and the one at bar is the fact that that was an artificial structure, while the

sidewalk used in this case was as nature had formed it. In *Mills* v. *City of Brooklyn*, 32 N. Y. 489, it was held that the duty of a city in constructing drains and sewers was of a judicial nature, requiring the exercise of deliberation and judgment for the exercise of which its officers, or the body represented by them, were not liable in a civil action; but where duties of a ministerial character were violated or neglected, a civil action would lie for damages by the party injured. In *Hines* v. *City of Lockport*, 50 N. Y. 238, RAPALLO, J., says: "Where power is conferred on public officers or a municipality to make improvements, such as streets, sewers, etc., and keep them in repair, the duty to make them is *quasi* judicial or discretionary, involving a determination as to the necessity, requisite capacity, location, etc., and for a failure to exercise this power, or an erroneous estimate of the public needs, no civil action is maintainable. But when this discretion has been exercised, and the street, sewer, or other improvement has been made, the duty to keep it in repair so as to prevent it from becoming dangerous to the public is ministerial, and, for a neglect or omission to perform that duty, an action lies by the party injured." In *Saulsbury* v. *Village of Ithaca, supra*, while the language used by the court would seem broad enough to embrace all defective walks in a village, whether artificial or natural, yet it must be construed as applicable to the case then under consideration, which was a case of an artificial structure. In *Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y. 466, 11 N. E. Rep. 43, the sidewalk and street had been laid out and used for 40 years; water-mains had been laid through the street, and the village had assumed jurisdiction over it, and curb-stones had been laid along the sidewalk at the expense of the village, and the court held that there was sufficient evidence of dedication and occupation from which the jury could properly find that it was one of the sidewalks of the village which it was bound to keep in repair. This case is also distinguishable from the one at bar. In this case there was evidence of acts by the corporation, from which the jury, (as the court held,) might find that the municipality had adopted the sidewalk, curbed it, and performed other acts amounting to an acceptance and dedication of the same as one of the sidewalks of the village, while in the case at bar, the only act proved was that the defendant had constructed and maintained a planked drive-way of 12 feet wide, in the middle of the street.

It is true that an artificial walk composed of flag-stone had been constructed by some one on the line of this street from the canal bridge, about 100 feet to the point where the natural rock surface cropped out, which pedestrians were accustomed to use as a sidewalk; but at that point all artificial improvement ended, and there was no evidence that the village authorities had done any affirmative act from which it could be claimed that they had exercised their *quasi* judicial functions of adopting this natural rock as a part of the system of sidewalks of the village. Was the allowance, by the village authorities, of its use by the public in connection with the artificial walk from the canal bridge, and its location within the boundary of Glen street, such an acquiescence in its use as a sidewalk, as to authorize the jury to find that it had been adopted by the village authorities as such? We are of the opinion that it was. If injury had occurred on the walk between the canal bridge and the surface rock, by reason of the same being in a dangerous or unsafe condition, the village would have been held liable, within the case of *Saulsbury* v. *Village of Ithaca, supra*. Glen street was a much-traveled thoroughfare. This walk was much used by pedestrians. It had been so used for 40 years, and was proved to have been used by the president of the defendant. In *Saulsbury* v. *Village of Ithaca*, the court says: "In this case, therefore, it can make no difference how the walk came into existence if the corporation, with notice, permitted it to be used for public travel." No case has been cited applying this language to a natural walk, but as this natural rock surface was a part or continuation of the artificial

walk from the canal bridge, for the safety of which we have seen the defendant would be liable, no reason is perceived why the same rule in this case should not apply to the natural-rock walk which the jury must have found had been adopted by the village as one of its sidewalks. Again, as we have seen, section 14 of the by-laws adopted June, 1883, charges the defendant with the duty of maintaining sidewalks of a kind and character described in such by-laws on both sides of all the streets in the village, and, while we are not called upon to determine the validity or effect of that by-law as to all the streets, the defendant cannot, we think, say, with that by-law in force, that it has not officially adopted and recognized this as the walk on one side of Glen street. Under that by-law it was the duty of the village to maintain a sidewalk on the east side of that street. This was the only walk at that point, and was used by the public as a sidewalk. *Jewhurst* v. *City of Syracuse*, 108 N. Y. 308, 15 N. E. Rep. 409.

But it is insisted on the part of the defendant that, under the charge of the judge at the trial, the jury must have found that the place where the deceased fell was manifestly dangerous, and, if that were so, the plaintiff's intestate must have been guilty of contributory negligence, and could not for that reason recover. The accident in this case occurred in the day-time at 3 or 4 o'clock in the afternoon of the 3d of May, and any defect that would render the sidewalk manifestly dangerous must have been visible to passers-by. But the evidence in this case does not disclose on what particular part of this walk the plaintiff's intestate fell. The only witness who saw the accident says in answer to a question put by the court, that he could not see from where he was whether the deceased's feet were on a level place or not, when he slipped and fell. Upon that evidence, the plaintiff fails to establish that the injury resulted from the defective or uneven surface of the walk. If this walk was defective at some point and in some particular that alone is not enough to authorize a recovery. It must also appear that the injury was occasioned by such defect. It is true in another part of this witness' testimony he says that deceased's foot rested upon a rise in the walk, and slipped off, but if, as the witness afterwards states, he could not see from where he was whether deceased's foot, at the time he stepped, was on a level place or not, the statement that his foot rested upon a rise and slipped off must have been an inference only, and not a fact known to the witness. It is not every accident that befalls persons traveling on streets and sidewalks that creates a liability against a municipality, and, unless the injury is clearly traced by the proof to the defective walk, the defendant is not liable. The burden is with the plaintiff to show, not only defect in the walk existing from the defendant's negligence, but that, by reason of that alone, without fault or negligence on the part of her intestate, the injury was occasioned. The failure of the plaintiff to establish by direct proof that the injury resulted from deceased stepping or stumbling on a defective portion of the sidewalk, when considered in connection with the undisputed evidence of deceased's defective limb, by reason of which he was liable and accustomed to fall while walking on a smooth surface, left the jury to speculate as to the cause of the injury. From the evidence it was impossible for the jury to determine which of these two possible causes produced this fall. He had fallen, and the fall had produced fatal results, but what caused the fall is left in doubt. In solving this doubt, it is probably creditable to the kindness of human nature that such doubts, if settled by a jury, are settled in favor of the weak against the strong; of the individual as against the municipality; and hence the rule of law that, if the fact is left by the proof in such a condition that the injury may be attributable to either of two causes, for one of which the defendant is, and for the other is not, liable, no recovery can be had. As was said in *Hunter* v. *Railroad Co.*, 116 N. Y. 624, 23 N. E. Rep. 9: "If the case is left in such a condition that it is just as possible the injury came from one cause

as the other, the judgment must be reversed." In *Taylor* v. *City of Yonkers*, 105 N. Y. 209, 11 N. E. Rep. 642, FINCH, J., in delivering the opinion of the court, says: "Where the defect is the sole explanation of the injury, there is no difficulty; but where there is also another for which no one is responsible, we have held that the plaintiff must fail if his evidence does not show that the damage was produced by the former cause." The rule that every reasonable intendment should be indulged in to support a judgment does not go to the length of requiring the court to uphold a verdict, where the jury have been called upon to speculate between two causes for the injury, either of which might have caused it, but neither of which is positively shown to have produced it, when one would create a liability and the other would not.

If I am right in the above conclusions, then it is unnecessary to examine the question raised by the appellant as to the absence of proof on the part of the plaintiff that intestate was guilty of no contributory negligence. I am, therefore, of the opinion that the judgment should be reversed, and a new trial ordered.